(Del. Rev. 12/98)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

COLLEEN MARIE HAYWOOD

(Name of Plaintiff or Plaintiffs)

v.   CIVIL ACTION NO. 05 - 789

ING Direct

ING BANK

(Name of Defendant or Defendants)

## COMPLAINT

1. This action is brought pursuant to TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
   (Federal statute on which action is based)
   for discrimination related to GENDER DISCRIMINATION & RETAILIATION jurisdiction exists by virtue of
   (In what area did discrimination occur? e.g. race, sex, religion)
   42 U.S.C. 2000e-5
   (Federal statute on which jurisdiction is based)

2. Plaintiff resides at 198 MANSION HOUSE DRIVE
   (Street Address)
   WEST CHESTER   CHESTER CO.   PA   19382
   (City)        (County)       (State) (Zip Code)
   (610) 429-8011
   (Area Code) (Phone Number)

3. Defendant resides at, or its business is located at 1 SOUTH ORANGE STREET
   (Street Address)
   WILMINGTON       DE    19801
   (City)    (County) (State) (Zip Code)

4. The alleged discriminatory acts occurred on _____, _____, _____.
   (Day)    (Month)   (Year)
   BEGINNING EARLIEST MAY 8, 2000 THROUGH MAY 22, 2003

5. The alleged discriminatory practice   ☐ is   ☒ is not continuing.

6. Plaintiff(s) filed charges with the **DELAWARE DEPARTMENT OF LABOR**
(Agency)
**4425 N. MARKET ST,   WILMINGTON   DE   19802**
(Street Address)   (City)   (County)   (State) (Zip)

regarding defendant(s) alleged discriminatory conduct on: **5/8/00 THROUGH 5/22/03**
(Date)

7. Attach decision of the agency which investigated the charges referred in paragraph 6 above.

8. Was an appeal taken from the agency's decision?   Yes ☐   No ☒

   If yes, to whom was the appeal taken? _____

9. The discriminatory acts alleged in this suit concern: (Describe facts on additional sheets if necessary)
   **SEE ATTACHED**

10. Defendant's conduct is discriminatory with respect to the following:

   A. ☐ Plaintiff's race
   B. ☐ Plaintiff's color
   C. ☒ Plaintiff's sex
   D. ☐ Plaintiff's religion
   E. ☐ Plaintiff's national origin

Colleen M. Haywood vs. ING Direct

#9 The discriminatory acts alleged in this suit are as follows:

1. Plaintiff began employment with ING Direct on May 8, 2000 as Facility Manager at a salary of $60,000 plus benefits and bonuses.

2. Almost immediately, Plaintiff was warned by several women in the office about harassing behavior by her direct supervisor, Jim Kelly, Executive Vice President of Sales.

3. Over the course of the first five months of employment, Plaintiff hired a staff for the Facilities Department including two female and one male employee. During this time, Plaintiff and female staff members were continuously harassed and subject to a hostile environment by Mr. Jim Kelly and Mr. John O'Keefe, a hired contractor who worked as construction manager on behalf of ING Direct. Mr. O'Keefe was employed by Mr. Alfredo Romano of Castlepoint, the owner and landlord of the building which ING Direct was preparing to occupy at 1 South Orange Street, Wilmington, DE.

4. As manager of the Facilities department, Plaintiff approached Mr. Jim Kelly several times about the hostile environment at ING Direct. Plaintiff also approached Mr. Alfredo Romano about the hostile environment created by his employee, John O'Keefe. In both cases, no action was taken.

5. By late October, early November of 2000, the hostile environment created by Jim Kelly and John O'Keefe had escalated. The Plaintiff, as well as her two female employees were banned from talking to contractors on the job site and essentially the job responsibilities which they were hired to perform had been drastically reduced.

6. On November 6, 2000, Plaintiff visited the Network Group, located in Wilmington, DE. The Network Group was the recruiting company that placed Plaintiff as well as various employees at ING Direct. The owner of the Network Group indicated that Mr. Kelly stated the following in regards to direction for hiring staff, "we're from Canada and we're sexist pigs. We like to drink and we want pretty women working for us."

7. November 9, 2000, Plaintiff learned that a vendor was officially and specifically notified by 2 male employees of Castlepoint to withhold project information from the Plaintiff. Plaintiff approached supervisor, Mr. Jim Kelly but no action was taken to remedy the situation.

8. By December 1, 2000, Plaintiff discussed hostile environment with Executive Human Resource representative, Mr. Ruud Polet. Mr. Polet insisted that the situation be discussed with CEO, Arkadi Kuhlmann and Jim Kelly. Initially,

Plaintiff feared losing her job as well as potential personal harm that may be a result of bringing a formal complaint to the attention of the executives.

9. By mid December, 2000 the Facility Management staff was placed under the direction of Mr. Hudson White, CFO for ING Direct. Mr. Jim Kelly was relieved of his responsibility due to the complaint with Human Resources.

10. The Facilities Staff was initially eager to begin working under Hudson White, and getting back to performing the job responsibilities initially hired to perform. After just a short time, it was apparent that Mr. Jim Kelly and Mr. Hudson White were extremely friendly and the Plaintiff was "labeled" and "black balled" within the entire ING Direct organization. Plaintiff had diminished responsibilities for her staff and the project management of the new headquarters building and the ING Direct café's that she was initially hired to oversee. Plaintiff was striped of her responsibilities in direct response to having filed complaint to human resources about Mr. Jim Kelly. Mr. Hudson White was directly responsible for stripping Plaintiff of any responsibilities except menial tasks.

11. Mr. John Anderson, male employee hired by Plaintiff, continually received preferential treatment by Mr. Hudson White and Mr. John O'Keefe. Mr. John Anderson, the only male employee in the Facilities Department is allowed access to work with and communicate with contractors on the job site, while the female employees including the Plaintiff are subject to harassing, demeaning and violently abusive screaming and yelling if they talk to contractors. Furthermore, the overall "sexist" environment continues as it is widely rumored that Mr. Anderson is involved with Mr. Hudson White's executive secretary, thereby granting him easy access to circumvent Plaintiff, further degrading her position within the organization.

12. Plaintiff is continually excluded from staff meetings with CFO as well as big events like the Grand Opening Event held in June 2000. Plaintiff is embarrassed by the continuing exclusion but is again fearful of reporting the activity. On at least one occasion, Plaintiff reports activities of Mr. John Anderson to Mr. Polet in Human Resources. In addition, Mr. Anderson's insubordination is documented in his file by the Plaintiff. Plaintiff notified Mr. Polet that Mr. White is giving preferential treatment to Mr. Anderson. Mr. Polet is aware of Mr. Anderson's relationship with Mr. White's executive assistant but no direct action is taken by Human Resources.

13. The two female employees that worked for Plaintiff realized that their careers at ING Direct are in jeopardy due to the "black balled" nature of their direct supervisor, the Plaintiff. Both of these two female employees soon chose to become aligned and "friendly" with several male executives, including Mr. Joe Cary, Mr. Grant MacKenzie and Mr. Tom Hugh, all senior executives of the Bank. At this time, the two female employees begin to be offered special projects and given preferential treatment while Plaintiff is further removed from projects. This further exposed Plaintiff to sexually harassing environment as she was

forced to work in an environment that continually viewed females as sexual playthings and rewarded and condoned that type of behavior.

14. By late September, early October 2001, the two female employees of the Plaintiff run into "personal problems" due to their social/friendly relationships with the male Executives. Shortly thereafter, Nicole Mercado, one of the female employees, is promoted and transferred to a different location in Philadelphia while Tanya Breck is terminated on October 6, 2001. Both of these actions against the female employees transacted without the involvement of the Plaintiff. At this time of departmental upheaval, the CEO, Mr. Arkadi Kuhlmann offers Plaintiff a special employment "deal" to create any position of her choice within the organization.

15. By November, 2001, Plaintiff had begun working a newly created position in the Finance Department under the direction of Ms. Patty Collins. The Plaintiff is now hoping to begin fresh in a new position. However, this position is still under the umbrella of the CFO, Mr. Hudson White and Ms. Collins is soon directed by Mr. White to have Plaintiff sign a job description for a degrading, entry level position that would subject her to working again for Mr. Jim Kelly's organization. The "black balling" continues by Mr. Hudson White and the Plaintiff is not allowed to integrate into the department effectively.

16. February 2002, Plaintiff is transferred to the Internal Audit department working for Ms. Cindy Seager under the executive direction of Mr. Mark Gibbons. Two months later, by April 2002, Ms. Seager is assigned a special project position in the Human Resources department. Ms. Seager requests that Plaintiff work with her on this special project in the Human Resources department as the Plaintiff is well respected by Ms. Seager. With this change, Ms. Seager begins reporting to Mr. Hudson White. As witnessed by Ms. Seager and Ms. Lori Sommerfield, Plaintiff continues to be "black balled" and outcast by Mr. Hudson White, often stared at intensely and degradingly during meetings. Later, Mr. John Bone, Chief Operating Officer is assigned responsibility over the Human Resources function and Ms. Seager now reports to him. Mr. Bone repeatedly makes sexist derogatory remarks in front of Plaintiff and Ms. Cindy Seager, who is now the acting Head of Human Resources. Nevertheless, the Plaintiff very much likes working for Ms. Seager in Human Resources and very much would like to acquire a permanent position as special projects manager in Human Resources. Ms. Seager very much wants the Plaintiff to continue working with her in this capacity.

17. By June 2002, Plaintiff is abruptly removed from the Human Resources department by the CEO and sent back to Internal Auditing where there is no manager or head of Internal Audit since Ms. Seager's departure.

18. September 2002, Plaintiff was notified by two female Human Resources Department employees that the CEO, Arkadi Kuhlmann called a meeting with the entire Human Resources department and specifically told them to disregard laws concerning hiring, firing, and the doctrines of the EEOC.

19. By October 16, the special projects position in Human Resources is filled by a male employee, Mr. Mike Kisko.

20. Plaintiff returns to Internal Auditing position, reporting to Executive of Risk Management, Mr. Mark Gibbons. Mr. Gibbons repeatedly ignores Plaintiff and her e-mail correspondences. He excludes Plaintiff from staff meetings. Plaintiff is excluded from department "offsite" dinner party and is only told about it as the entire department is departing to go to dinner together. Also during the course of working for Mr. Gibbons, preferential treatment is given to a male employee, Mr. John Stipo. Mr. Stipo is an entry level employee who sometimes works as Internal Auditor. On at least one occasion, Plaintiff's Audit work and Audit Report is given to the male employee to submit to executive management under his authorship.

21. January 2003, a new head of Internal Audit supervisor, Mr. Rob Middleton has been hired and Plaintiff now reports to Mr. Middleton. By April 2003, ING Direct begins implementing a new Pay Grade structure. Mr. Middleton reviews the preliminary information with Plaintiff and shows Plaintiff where the Internal Audit positions are graded as a Pay Grade 10. Mr. Middleton proceeds to tell Plaintiff that she will be down graded to a Pay Grade 6. Pay Grade 6 is the entry level position, same as that of an order entry operator and well below the level of Manager that she was hired in at in May 2000. Mr. Middleton indicates that male employee, Mr. John Stipo will be graded as a Pay Grade 8, above that of the Plaintiff. Mr. Middleton stated that if it were up to him, he would have graded Mr. Stipo and the Plaintiff at same pay grade, Grade 8. Mr. Middleton also stated that he was taking direction from Mr. Mark Gibbons and Mr. John Bone and had no way to change my lower grading. Plaintiff repeatedly asked for copies of grading analysis but was never allowed to see the criteria developed by Human Resources for the various Pay Grade levels. Plaintiff was repeatedly told to sign the new grade level or she would forfeit her opportunity to receive and participate in annual bonus program.

22. On May 12, 2003, Plaintiff requested a meeting with CEO, Arkadi Kuhlmann to discuss her proposed demotion and disparate treatment in relation to the male employee. Plaintiff was redirected to meet with Mr. John Bone. Those meetings continued to get cancelled. Mr. Middleton warned Plaintiff that if she pushed the issue with Mr. John Bone, it would not be in her best interest and the consequences could be dire. He stated that it was in her best interest to "sit" on the issue for awhile.

23. May 22, 2003 Plaintiff was terminated by Mr. Middleton, the new Head of Human Resources and Mr. Mark Gibbons.

11. Plaintiff prays for the following relief: (Indicate the exact relief requested)

SEE ATTACHED

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: 11/15/05

*(signature)*
(Signature of Plaintiff)

Colleen M. Haywood vs. ING Direct

Plaintiff prays for the following relief.

> Court enter judgment in Plaintiff's favor and against Defendant Employer, ING Direct and award compensation for past and future pecuniary and non pecuniary losses resulting from the unlawful retaliatory employment practices including but not limited to; back pay, front pay, punitive damages, attorney's fees, out-of-pocket losses, court costs, pre and post judgment interest, damages for emotional distress, damages for pain and suffering, humiliation, embarrassment, loss of life's pleasures, lost wages, fringe benefits, and all such other and further damages and relief permitted by law and otherwise that the Court deems just and proper.

Plaintiff is also requesting of the Court for assignment of Legal Counsel to assist Plaintiff in the case against Defendant, ING Direct.